697 A.2d 258

**CHELTENHAM TOWNSHIP, Appellant,**

v.

**CHELTENHAM CINEMA, INC., Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 16, 1996.

Decided June 18, 1997.

Reargument Denied Sept. 5, 1997.

Andrew B. Canton, for Cheltenham Township.

Roberta B. Binder, Blue Bell, for Appellants.

Lewis A. Grafman, Gaele McLaughlin Barthold, Philadelphia, for Chelterham Cinema, Inc.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## *OPINION*

NIGRO, Justice.

In this business privilege tax case, Cheltenham Cinema ("the Cinema") operated a movie theater in Cheltenham Township ("the Township") between 1978 and 1987. During these years, the Cinema paid an annual business privilege tax to the Township on all non-admissions revenues, including revenues from concession sales.[1] *See* Trial Court Opin. at 2. However, during these same years, the Cinema refused to pay any business privilege taxes to the Township based upon revenue generated from admission ticket sales, relying on section 6902(10) of the Local Tax Enabling Act ("the Act") which

---

**1.** Pursuant to Pennsylvania's Local Tax Enabling Act, 53 P.S. § 6901–6924, the Township on December 30, 1976 enacted a Business Privilege Tax Ordinance (Ordinance No. 1400), which imposes an annual business privilege tax upon, *inter alia,* "operators of places of amusement providing either passive or active recreation."

provides, in relevant part, that the Township shall not have the authority to "levy, assess or collect *a tax on admissions to motion picture theaters.*" 53 Pa.C.S. § 6902(10)(emphasis added).

In July, 1984, the Township filed an action in the Court of Common Pleas of Montgomery County, seeking to compel the Cinema to pay business privilege taxes on total gross receipts including revenue derived from admission ticket sales.[2] On July 21, 1994, following a non-jury trial in the Court of Common Pleas of Montgomery County, the trial court found that the Township was barred under section 6902(10) of the Act from collecting the business privilege tax based upon gross revenue generated from ticket sales. The Commonwealth Court affirmed in *Cheltenham Township v. Cheltenham Cinema, Inc.*, 661 A.2d 23 (Pa.Commw., 1995). This Court granted allocatur limited to the question of whether the Township was barred under section 6902(10) of the Local Tax Enabling Act from collecting business privilege taxes from the Cinema. We disagree with the Commonwealth Court's reasoning with regard to the interpretation of the business privilege tax, but we nevertheless affirm the Order.[3]

In the instant case, both the trial court and the Commonwealth Court interpreted the language in section 6902(10) as preempting the Township's ability to collect any tax on the Cinema's ticket admission sales, thus precluding collecting municipal business privilege tax based on total gross receipts.

In *Middletown Township v. Alverno Valley Farms*, 105 Pa. Commw. 311, 524 A.2d 1039 (1987), *allocatur denied*, 517 Pa. 600, 535 A.2d 1058 (1987), appellee, Alverno Valley Farms was a building and construction firm engaged in the business of erecting and constructing new residential dwellings in Middletown Township. The Commonwealth Court reviewed the is-

2. The Complaint was amended twice, with the Second Amended Complaint filed by the Township on December 5, 1989.

3. The lower courts held that the Township was barred from collecting business privilege taxes because it failed to comply with procedural requirements under the local ordinance. *See Cheltenham*, 661 A.2d at 24. We affirm.

sue of preemption of state regulatory taxing schemes in relation to local taxation measures and found that the application of a municipal business privilege tax to a building construction firm was permissible pursuant to 53 Pa.C.S. § 6902(11) even though a provision of the Local Tax Enabling statute prohibited imposing a local tax on the construction of, or improvement to, residential dwellings. *Middletown Township*, 105 Pa. Commw. at 315, 524 A.2d at 1041. *See also* 53 Pa.C.S. § 6902. In *Middletown Township*, the Commonwealth Court explained that to resolve the question of whether the municipality's business privilege tax on construction firms was permissible, it was necessary to perform a preemption analysis.[4] Unlike both the Banking Code[5] and the Liquor Code[6] which contain sufficiently comprehensive state regulatory schemes to preempt local taxation measures, the *Middletown Township* Court emphasized that there was "no intent on the part of the legislature to control the building industry by a comprehensive regulatory scheme." *Middletown Township*, 105 Pa. Commw. at 314, 524 A.2d at 1041.

Also, in *Middletown Township*, the court found that the Township's business privilege tax on the construction industry did not tax the subject matter Section 6902(11) of the Act prohibited because:

> The local tax is a tax on the privilege to do *business* and it is measured by the gross volume, determined by receipts, of business conducted by the taxpayer, whereas the prohibition under section 2(11) of the Act addresses taxes on the

**4.** The preemption analysis by the Commonwealth Court in *Middletown Township* focused on "whether the legislature intended to deprive the municipality of its statutory power to levy a business privilege tax ... whether the 'general tenor' of the state statute was intended to preempt the field as to local taxation." *Middletown Township*, 105 Pa. Commw. at 314, 524 A.2d at 1040 (citing *Western Pennsylvania Restaurant Ass'n v. Pittsburgh*, 366 Pa. 374, 77 A.2d 616 (1951)).

**5.** *Pittsburgh v. Allegheny Valley Bank*, 488 Pa. 544, 412 A.2d 1366 (1980) (holding that Banking Code of 1965, Act of November 30, 1965, P.L. 847, No. 356, as amended, 7 P.S. §§ 101–2204, preempted local tax).

**6.** *Commonwealth v. Wilsbach Distribs., Inc.*, 513 Pa. 215, 519 A.2d 397 (1986)(holding that Liquor Code, Act of April 12, 1951, P.L. 90, as amended, 47 P.S. §§ 1–101 to 9–902 preempted local tax).

construction of a *residence,* and thus has no relationship to the volume of business conducted. The impact of the two taxes is on a totally different basis. Carrying on a construction business, such as that in which appellee is engaged, involves much more than the construction of a residence. *Middletown Township,* 105 Pa. Commw. at 315, 524 A.2d at 1041 (emphasis added). Finding that the Township's business privilege tax on the construction industry was not preempted and did not conflict with section 6902(11) of the Act, the *Middletown Township* court ruled that the business privilege tax was therefore permissible.

■ We find the rationale of *Middletown Township* equally applicable. As with the construction industry in *Middletown Township,* we do not see any intent on the part of the legislature to control the movie theater industry by a comprehensive regulatory scheme. Here, the Cinema which is subject to the business privilege tax bears stark contrast to the banking and liquor industries at issue in *Allegheny Valley Bank* and *Wilsbach,* respectively, where, in those industries, the existence of comprehensive regulatory schemes preempted local taxation measures.[7] We thus do not find that section 6902(10) of the Act preempts the Township's authority to collect a business privilege tax from the Cinema based upon gross receipts derived from ticket sales.

■ Moreover, the local tax in this case does not tax the same subject matter which is excluded from taxation under section 6902(10) of the Act. The Township's business privilege tax on the Cinema is a tax on the Cinema's privilege *to do business,* and it is measured by gross volume, determined by gross receipts, which would include both the Cinema's concession business and its ticket sales. In contrast, section 6902(10) of the Act prohibits the Township from collecting a tax directly on movie theater admission sales. Since the business privilege tax in this case does not tax the identical subject matter as specified in section 6902(10) of the Act, nor is it measured by the same base, we find that the Township is not

7. See footnotes 4 and 5.

barred under section 6902(10) of the Act from collecting the business privilege tax from the Cinema based upon gross receipts derived from ticket sales.

Therefore, as explained, we disagree with the Commonwealth Court's reasoning insofar as the interpretation of the business privilege tax, but we nevertheless affirm the Order.

NEWMAN, J., did not participate in the consideration or decision of this case.

CAPPY, J., files a concurring opinion in which FLAHERTY, C.J., joins.

CAPPY, Justice, *concurring.*

I concur in the result reached by the majority. Both the trial court and the Commonwealth Court held that Cheltenham Township is barred from the collection of its Business Privilege Tax because the Township failed to comply with its own Tax Ordinance. Section 3 of the Township's Business Privilege Tax Ordinance provides in relevant part:

> If any taxpayer or supposed taxpayer shall neglect or refuse to make any return and payment of tax required by this Article, or if, as a result of an investigation by the Collector, a return is found to be incorrect, the Collector shall estimate the tax due by such person and determine the amount due for taxes, penalties and interest thereon.

Cheltenham Township Ordinance No. 1400, Article IX, Section 3. The trial court found that in this case, Section 3 required the Collector to estimate the amount due for taxes, penalties and interest thereon as a condition precedent to the Township instituting an action to collect unpaid taxes. *Township of Cheltenham v. Cheltenham Cinema, Inc.,* No. 84–11815, Court of Common Pleas, Civil Division, Montgomery County, slip op. at 14–15 (Jan. 27, 1995). Accordingly, because the Township failed to comply with its mandatory statutory duty, it was barred from collecting the back taxes allegedly due. The Commonwealth Court adopted the opinion of the trial court. *Cheltenham Township v. Cheltenham Cinema, Inc.,* 661 A.2d 23, 25 (Pa.Cmwlth.1995). The Township petitioned for allow-

ance of appeal, arguing that the Commonwealth Court erred in: 1) finding that the Local Tax Enabling Act ("LTEA"), 53 P.S. § 6902(10), preempted the Township's Business Privilege Tax as applied to Cheltenham Cinema's ticket revenues; 2) deciding this case contrary to another case decided by the Commonwealth Court in an opinion which was not published; and 3) holding that the Township was barred from collecting the Business Privilege Tax because it failed to comply with the prerequisites of its own Tax Ordinance. This court granted the Township's petition but limited solely to the first issue, i.e., whether the LTEA preempted the application of the Township's Business Privilege Tax to the revenues generated from the sale of theater tickets.

Accordingly, by this court's own choice, the only issue properly before us is the LTEA preemption issue. But, as the majority's opinion demonstrates, this court's decision regarding that issue has no bearing on the ultimate decision of this case. Notwithstanding the fact that the majority disagrees with the rationale of the lower courts regarding the LTEA's preemptive effects, the majority nevertheless must affirm the decision of the lower courts because of the lower courts' disposition of other issues which are sufficient to support the outcome of this case and which are not before this court given the limited grant of allocatur.

I find this state of affairs to be jurisprudentially troubling. Indeed, a judicial "ruling" that is not **necessary** to the decision of a case amounts to nothing more than mere obiter dictum. *Sproul v. Gambone,* 34 F.Supp. 441 (W.D.Pa.1940); *see also In re Estate of Cassell,* 334 Pa. 381, 6 A.2d 60 (1939). As this court reviews judgments or orders and not the reasons advanced by the lower courts in support of their judgments, *Millili v. Alan Wood Steel Co.,* 418 Pa. 154, 209 A.2d 817, (1965), and as the judgments of the lower courts are correct based upon the failure of the Township to comply with its own ordinance as the majority apparently concedes, *see* Majority op. at 259 n. 3, it is unnecessary to the decision of this case to reach the issue of the preemptive effect of the LTEA. As the ruling of the majority is not necessary to the decision of this

case, I consider it mere obiter dicta, and as such, I cannot join.[1]  Therefore, I am constrained to concur in the result only.

FLAHERTY, C.J., joins this concurring opinion.

1. As the Supreme Court noted with approval
   > I am extremely reluctant to decide anything except what is necessary for the special case, because I believe by long experience that judgments come with far more weight and gravity when they come upon points which the Judges are bound to decide, and I believe that obiter dicta, like the proverbial chickens of destiny, come home to roost sooner or later in a very uncomfortable way to the Judges who have uttered them, and are a great source of embarrassment in future cases.

   *Darr v. Burford,* 339 U.S. 200, 214 n. 38, 70 S.Ct. 587, 595 n. 38, 94 L.Ed. 761 (1950).